410 So.2d 1213 (1982)
Dallas P. GUILLORY, et al., Plaintiffs-Appellants,
v.
CALCASIEU PARISH POLICE JURY, Defendant-Appellee.
No. 8648.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
*1214 Hunt, Godwin, Painter & Roddy, John S. Hood, Lake Charles, for plaintiffs-appellants.
Gregory W. Belfour, Lake Charles, for defendant-appellee.
Before GUIDRY, SWIFT and STOKER, JJ.
STOKER, Judge.
This is a suit by Dallas P. Guillory and Harry Guillory[1] against the Calcasieu Parish Police Jury for breach of a contract of lease of land located in Calcasieu Parish for use as a waste disposal area. The primary issue in the case is whether the Calcasieu Parish Police Jury (Police Jury) was bound by a provision contained in Paragraph 4 of the contract which required the Police Jury to fill the land to the level of the Old Town Road road bed with at least two feet of dirt above the trash.
The contract was entered into on April 4, 1974. Rent was paid for a certain period and the leased area was used to some extent. The petition alleges that the defendant Police Jury discontinued its operation of the fill area prior to April 1, 1976, and failed to pay the annual rent due on April 3, 1977. Plaintiffs claim damages in the amount of $638,880.00.[2] The trial court rejected plaintiffs' demands and they have appealed.
*1215 The evidence reveals and the trial court apparently found that the lease contract was initially drafted in the Police Jury's administrative office. Plaintiffs' attorney prepared the controversial Paragraph 4 of the contract and plaintiffs requested its inclusion. This was apparently done without the knowledge of the Police Jury. There is also some confusion resulting from the fact that the lease contract may have been signed at a later date than that indicated on the contract.
On April 3, 1974, the Police Jury approved the bare proposition to lease approximately seventeen acres from Lake Charles Auto Salvage at $20.00 per acre "for use at the Highway 171 dump". The trial court found that nothing was done toward execution of a written lease or payment of rental until early April 1976. Although the lease is dated April 4, 1974, the trial court found the lease was probably executed on April 6, 1976, and a check for the rental for three years amounting to $720.00 was issued by the Parish Treasurer on that date. Nevertheless, the lease was signed on behalf of the Police Jury by Mr. Gene Whittler who had been president of the Police Jury in 1974 although he was not president on April 6, 1976.
Plaintiff-appellants have set forth the following contentions in support of the validity and binding nature of Paragraph 4 of the contract of lease and as grounds for reversal of the trial court:
1. Judicial Confession. Plaintiffs' petition alleged the existence of the contract and its obligations. The defendant answered the petition and admitted the allegations concerning the contract; plaintiffs contend defendant is therefore bound under LSA-C.C. art. 2291 through judicial confession. Plaintiffs also contend the trial court erred in later permitting the Police Jury to amend the answer to set the terms of the contract at issue.
2. Defendant Drafted the Contract. Plaintiffs contend that the entire contract was drafted by the Police Jury and therefore any ambiguities in the contract should be construed against it.
3. Estoppel Against Public Bodies. Plaintiffs contend that estoppel runs against public bodies. Plaintiffs further contend that the Police Jury led them to believe that the contract signed would be adhered to.
4. Acceptance of Benefits by the Police Jury. For a certain period the Police Jury accepted the benefits of the lease contract and used the land. Hence, plaintiffs contend defendant may not thereafter void and default on the contract.
5. Admissibility of Parol Evidence. Plaintiffs urge that the trial court erred in admitting evidence to vary and contradict the terms of the contract.
6. Apparent Authority. Plaintiffs invoke this doctrine to support the validity of the contract on the ground that the Police Jury official who signed it and the Parish Administrative Office personnel who prepared the contract had apparent authority to act for the defendant.
7. Payment of Rental as Estoppel. Plaintiffs contend that by paying the annual rental of $240.00 per year for the first three years of the life of the contract, the defendant was then estopped from repudiating the contract.
8. Failure of Notice of Cancellation. The contract provided that either party might cancel the lease on sixty days written notice. The Police Jury never gave the proper notice for cancellation of the contract.
9. Best Evidence Rule. The lease contract is the best evidence of its provisions.
10. Damages. Primarily plaintiffs seek to have the Police Jury ordered to resume operations at the waste disposal site. In the alternative, if such an order is not granted, the plaintiffs seek damages.

TRIAL COURT'S REASONS FOR JUDGMENT
The trial court gave full, well reasoned reasons for its judgment. After carefully considering the facts as disclosed by the record and the arguments of counsel, *1216 we consider that the trial court was correct in its findings of fact, and we adopt its reasons for judgment as our own. We set forth those reasons in full:
"On September 27, 1976 the Calcasieu Parish operated trash and waste disposal site on U. S. Highway 171, north of the City of Lake Charles was closed. The landowners, Dallas P. Guillory and Harry Guillory have filed this lawsuit seeking $733,120.00[3] in damages, together with interest and costs, as a result of the closure. Plaintiffs allege they entered into a written lease with the defendant, the Calcasieu Parish Police Jury and because of a breach of the lease, plaintiffs have been damaged.
"From the evidence it is clear that sometime in 1970 the Police Jury started a trash and garbage dump on old U. S. Highway 171 without written authority of the landowners but with their oral consent. The site was low swampland subject to overflow. The plaintiffs acquired adjacent lands and on a neighboring tract conducted a used auto parts and salvage business. Plaintiffs operated this business under the trade name of Lake Charles Auto Salvage, Inc. although no such entity had ever been created.
"On May 25, 1974 the Road and Bridge Committee recommended to the Police Jury `that it be approved to lease approximately seventeen (17) acres of land from Lake Charles Auto Salvage, at $20.00 per month for use at the Highway 171 dump.' This recommendation was approved by the Police Jury on April 3, 1974. Nothing more was done regarding execution of a written lease or payment of the rental until early April of 1976. At that time Mr. Dallas P. Guillory secured a typed copy of the property description from his attorney and brought it to Mr. Arthur Darnstead, Jr. who at that time was administrative assistant to the Parish Administrator and Engineer. Mr. Darnstead then prepared a written lease agreement. Mr. Guillory took a copy thereof to his attorney. His attorney reviewed the lease and drafted an additional provision which became Paragraph 4 of the executed lease.[4] Mr. Guillory then brought the papers back to Mr. Darnstead who caused the instrument to be re-typed so as to include the additional provision as Paragraph 4. The lease was then signed by Mr. Guillory as a representative of Lake Charles Auto Salvage, Inc. Although the date of execution was written into the lease as April 4, 1974, the actual date upon which Mr. Guillory signed was probably April 6, 1976. It was on that date that, pursuant to a memorandum addressed to the Parish Treasurer (P-32), a check (P-33) was issued to Lake Charles Auto Salvage, Inc. for three (3) years rental amounting to $720.00. Mr. Fred Godwin was Police Jury President in 1976 but the written lease agreement signed that year and dated in 1974 was executed by Mr. Gene Whittler who had been Police Jury President in 1974.
"Several fires occurred at the dump site in the summer of 1976 requiring much equipment and expense to control. Under pressure and criticism of several environmental agencies, the jury padlocked the site on September 27, 1976 although the then current lease term did not expire until April of 1977.
"When this suit was originally answered by defendant's attorney, its' answer to plaintiffs' allegations No. 6 read:

*1217 `Defendant admits the allegations of Paragraph 6 of plaintiffs' petition.'
"Subsequently a new District Attorney was elected for Calcasieu Parish and the Court permitted the new legal representative of the Police Jury to amend its answer to read:
`Defendant denies the allegations of Paragraph 6 of plaintiffs' First Supplemental and Amending Petition and further affirmatively pleads error, mistake, estoppel, illegality, and want of and lack of authority on the part of the persons who allegedly executed and/or prepared the instrument referred to in said paragraph.'
"Plaintiffs' argue that such amendment was improper and defendant is bound by their original answer. This argument is without merit. Plaintiff has shown no prejudice by the amendment. Had some prejudice been shown the Court would have granted a continuance of the trial date.
"Defendant argues that this suit should be dismissed because the lessor was a non-existent corporation. Since no articles of incorporation had been entered into between plaintiffs, they should not be allowed to pursue this matter. This argument is also without merit. Plaintiffs' lack of corporate status is not available to defendant to defeat the claim on the merits. Painting Systems, Inc. v. Popkins, 376 So.2d 584 (La.App. 4th Cir. 1979).
"The crux of this entire matter is whether there is a binding contract between the parties or not. It is basic law that before there can be a binding contract it is essential that there be consent of both parties. The minutes of the Police Jury reflect that it only intended to lease approximately seventeen (17) acres at a monthly rental of $20.00. Never was it discussed or contemplated that such an insignificant lease may require the jury to expend hundreds of thousands of dollars in damages for failure to comply with the lease. Mr. Darnstead testified he did not read the provision which Mr. Guillory brought back from his attorney and which later became Paragraph 4 of the lease. Apparently no one in the parish government was ever aware of the provision until the dump was closed and plaintiffs began to make inquiries."
The trial court then adopted as its own certain portions of the defendant's argument which we paraphrase as follows. Plaintiffs have not proved that the consent to the terms of P-25 by the Calcasieu Parish Police Jury was ever given. To the contrary, it has been affirmatively shown that the only approval ever given by the Jury was as follows:
"That it be approved to lease approximately 17 acres of land from Lake Charles Auto Salvage at $20.00 per month for use at the Highway 171 Dump."
There was therefore no authority and no consent for any officer or employee to agree to fill the "Guillory site" to the level of Old Town Road. Individuals cannot bind the Police Jury absent its consent or authority. It is "Well established that an individual member of the Police Jury cannot bind the Jury as a governing body by his acts." Starnes v. Police Jury of Rapides Parish, 27 So.2d 134 (La.App. 2nd Cir. 1946). See also, Condran v. City of New Orleans, 43 La.Ann. 1202, 9 So. 31 (1891). Even the President of a Police Jury is unable to legally execute any contract departing from the terms of a resolution adopted by the Jury. Burk v. Livingston Parish Police Jury, 207 La. 533, 21 So.2d 719 (1945) "No officer of a Police Jury can legally bind, or stand in judgment for the corporation without special authorization." Lane v. E. J. Deas Co., 12 La. App. 382, 125 So. 514 (2nd Cir. 1929).
The plaintiffs, in their brief, assert that the Police Jury is estopped from denying the validity of the contract. In applying the doctrine of estoppel, it must be kept in mind that estoppels are not favored in law because they bar the normal assertions of rights. Abbeville Lumber Company v. Richard, 350 So.2d 1292 (La.App.3rd Cir. 1977). Three of the elements of estoppel required before the court can invoke the doctrine are
*1218 (1) a representation by conduct or word;
(2) justifiable reliance; and
(3) a change of position to one's detriment because of the reliance. Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975) and cases cited therein.
The plaintiffs, however, incorrectly apply the law to the facts at hand. Even assuming that the first two elements are present, the plaintiffs do not prove the third element which is a party justifiably relying on such and who has changed his position to his detriment as a result of such reliance, Wilkinson, supra.
The trial court concluded its reasons for judgment as follows:
"Plaintiffs' argument of estoppel is without merit.
"Plaintiffs also argue that the custom and policy of the Police Jury in allowing the administrator's office to draft contracts between the Police Jury and third parties grant to the Parish Administrator and his assistants the apparent authority to effectually obligate and bind the Jury to the terms of the contract. The doctrine is not applicable to public bodies. Starnes v. Police Jury of Rapides Parish, [supra].
"For the foregoing reasons this Court finds that Paragraph 4 of the lease is unenforceable. Therefore, it is unnecessary to consider the element of damages."
As noted above the plaintiffs rely on the parol evidence rule and urge that the trial court erred in admitting parol evidence to vary and contradict the terms of the written contract. It is our view that the rule is not applicable. In this case defendant offered parol evidence to show that the contract was unauthorized and its purported consent was not in fact given. It is clear that parol evidence is not admissible as a general rule to explain, contradict, vary, add to, or subtract from the terms of a written contract. Here, however, the Police Jury is seeking to avoid the lease contract altogether rather than change, add, or subtract from it. We think this is a distinguishable situation; but, in any event, the defense that the Police Jury did not agree or consent to the contract would represent an exception to the parol evidence rule. See Pugh, Louisiana Evidence Law, 1978 Supplement, at page 687 and Tobin v. Louisiana State Board of Education, 319 So.2d 823 (La.App.1st Cir. 1975).
There are certain fallacies in plaintiffs' arguments which merit further discussion and emphasis. Plaintiffs refer in their brief to the case of Daspit v. City of Alexandria, 342 So.2d 683 (La.App.3rd Cir. 1977) in which the owner of property used as a landfill attempted unsuccessfully to rely on estoppel to hold the City of Alexandria to an unauthorized contract signed by the city's mayor. In Daspit the city council had not authorized the contract, and the council members other than the mayor were not informed of its existence. Plaintiffs argue that what was missing in Daspit is present here because the Police Jury authorized the lease of plaintiffs' land for a landfill. This argument assumes too much.
A proper understanding of the facts of this case must take note of the fact that the sole action of the police jury was to approve the general proposition that seventeen acres of plaintiffs' land be leased for a specific price for three years. There is no proof in the record that the proposed lease containing Paragraph 4 drafted by plaintiffs or their attorney was ever brought to the Police Jury's attention or that the Police Jury approved the terms of the lease. It was one thing for the Police Jury to approve the general proposition of leasing but quite another thing for the Police Jury to be legally bound to the written lease as confected.
For the Police Jury to have become bound contractually, it would have been necessary that the final contract of lease as drafted be submitted to the jury for consideration and for it to have adopted an appropriate resolution approving the terms of the lease and authorizing the execution of the lease on behalf of the Police Jury by its representative.
In like manner for the Police Jury to be held under equitable estoppel it would have been necessary that the members of the *1219 Police Jury become aware of the specific terms of the written lease to which plaintiffs seek to hold the Police Jury. Plaintiffs cite the case of Rogers v. First Sewerage District of the City of Lake Charles, 171 So.2d 820 (La.App.3rd Cir. 1965), writ denied, 247 La. 716, 174 So.2d 130 (La.1965), for the proposition that estoppel is applicable to municipalities under certain circumstances if the act or conduct relied on to create estoppel is within the corporate power of the municipality. However, as plaintiffs concede in Rogers the members of the sewerage board had full knowledge of the occurrence in question. Here, however, there is no proof that any members of the Police Jury, other than the member who signed it, were aware of the provisions inserted in the contract.
It should be emphasized that the provisions of Paragraph 4 of the contract went beyond the terms of the resolution which was adopted by the Police Jury. The resolution adopted specified a consideration in money which was eventually paid. It is clear, nevertheless, that what plaintiffs hoped to reap from the contract was the filling of their low land to a level that would make it usable and consequently more valuable. Despite plaintiffs' hopes and expectations, the Police Jury was not bound to fill the land either under contract or because of equitable estoppel. The general proposition of leasing actually approved by the Police Jury included the payment of a consideration for use of the plaintiffs' land for waste disposal. The consideration was $240.00 per year. Assuming that there were no price deficiencies based on this amount, a lease on these terms would not have obligated the Police Jury to place any fill at all on plaintiffs' land so long as it paid the rent.
As we understand plaintiffs' position, it is that filling their low land up to the level of Old Town Road was the real consideration for their leasing the land to the Police Jury. As pointed out above, the Police Jury never committed itself to such an obligation, and there is no proof in the record that its members were aware that plaintiffs leased their land on the assumption that filling was a consideration.
Among the arguments urged by plaintiffs is the assertion that they purchased the property in question on the representation by the Police Jury that if they did so the Police Jury would fill it with waste to the level indicated. It is our understanding that the action of the Police Jury approving the general proposition of leasing plaintiffs' land took place at a time when plaintiffs already owned the land. In any event, there is no evidence that the Police Jury induced plaintiffs to acquire the land by a promise to fill it.
In oral argument able counsel for plaintiffs cited the case of Marceaux v. Town of Lake Arthur, 392 So.2d 783 (La. App.3rd Cir. 1980) in connection with plaintiffs' argument concerning unjust enrichment. We do not consider that the case is in any way apropos. In any event, however, our appreciation of this issue is that such enrichment as Calcasieu Parish may have reaped was paid for. Whether the price paid bore a proper relationship to the privilege of dumping waste material on plaintiffs' land has not been raised. Plaintiffs simply take the position that the major consideration was the dumping of sufficient fill to bring the level of the land up to the level of Old Town Road. This, as pointed out, was not agreed to by the defendant.
Alternatively plaintiffs seek damages to compensate them for the condition in which their land was left. Again our answer is that the Police Jury paid a price for use of the land, and there is nothing in the record nor any legal considerations which required the defendant to leave the land in any particular condition.
For the foregoing reasons the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiffs.
AFFIRMED.
NOTES
[1] Plaintiffs allege they are a partnership and in the past have done business as Lake Charles Auto Salvage, Inc. They further allege, however, that no such corporation has ever been registered with the State of Louisiana.
[2] Plaintiffs allege in the alternative that if the court should order the defendant Police Jury to complete the fill, plaintiffs nevertheless are entitled to engineering fees of $4,000.00 and attorney fees in the amount of $90,000.00 arising from the breach and the rent due April 3, 1977, in the amount of $240.00.
[3] Plaintiffs' third supplemental and amended petition sets forth the damages as $688,880.00. In the alternative, plaintiffs' demand is for $94,240.00 to cover attorney and engineering fees and rent due April 3, 1977.
[4] Paragraph 4 of the lease provides:

"Lessee shall apply or add fill dirt on compacted trash as it reaches road level, specifically naming Old Town Road as the elevation point. Upon leaving leased premises all levels shall be filled and brought up to the level of roadbed. Lessee shall have at least two feet of fill dirt above trash between upper level of trash and roadbed. Upon leaving premises Lessee shall leave said premises in a level and uniform condition throughout and normal drainage necessary to sufficiently drain said property and to maintain draining of such."